**UNITED STATES of America,
Plaintiff,

v.

Barbara PLISKOW, Defendant.
Crim. A. No. 46286.**

United States District Court,
E. D. Michigan, S. D.
Jan. 26, 1973.

**370**

Ralph B. Guy, Jr., U. S. Atty., William C. Ibershof, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Joel M. Shere, Harold E. Leithauser, Detroit, Mich., for defendant.

## OPINION

GUBOW, District Judge.

Defendant is charged in Count 1 of a 7-Count Indictment with the offense of attempted aircraft piracy in violation of 49 U.S.C. § 1472(i). Count 4 charges Defendent with knowingly and unlawfully carrying an explosive during the commission of an attempted aircraft piracy in violation of 18 U.S.C. § 844(h) (2). It is agreed between the parties that Count 4 is dependent upon the validity of Count 1. Therefore, should Count 1 fall, Count 4 would also fall and, conversely, should Count 1 survive, Count 4 would also survive.

On May 5, 1972, this court, after hearing argument, denied Defendant's motion to dismiss Counts 1 and 4.

The court now has before it Defendant's motion for a rehearing of the original motion in light of legislative history recently uncovered by Defendant which was not before the court at the time of the original motion. The relevant facts, as outlined in the court's May 5, 1972 decision, bear repeating here:

Defendant boarded the aircraft in question on September 24, 1971, armed with two (2) sticks of dynamite and a .25 caliber automatic pistol. Having been informed that the Defendant was going to attempt an airplane hijacking, the U. S. Marshals ordered that the plane be evacuated under the pretext of mechanical difficulties. After exiting the plane, Defendant was recognized by Marshals and Detroit police in the terminal. As they approached her, Defendant drew her pistol and shouted that everyone was going to die. A struggle ensued and she was arrested. The pistol and dynamite were seized. At no point prior to her arrest did the airplane leave the terminal gate, nor were the airplane engines ever started. There is no question but that the aircraft had not yet applied its power for the purpose of takeoff at the time of the alleged offense.

■ The question before the court is: when does federal jurisdiction attach under § 1472(i) in a case of attempted aircraft piracy. Section 1472(i) of Title 49 provides as follows:

"(1) Whoever commits or attempts to commit aircraft piracy, as herein defined, shall be punished—

(A) by death if the verdict of the jury shall so recommend, or, in the case of a plea of guilty, or a plea of

not guilty where the defendant has waived a trial by jury, if the court in its discretion shall so order; or

(B) by imprisonment for not less than twenty years, if the death penalty is not imposed.

(2) As used in this subsection, the term 'aircraft piracy' means any seizure or exercise of control, by force or violence or threat of force or violence and with wrongful intent, of an aircraft within the special aircraft jurisdiction of the United States."

Section 1301(32) of Title 49 provides that the term "special aircraft jurisdiction of the United States" includes aircraft while in flight. It further provides that "[f]or the purpose of this definition, an aircraft is considered to be in flight from the moment when power is applied for the purpose of takeoff until the moment when the landing run ends". In the circumstances of this case, since the aircraft was not in flight at the time of the alleged offense, it is clear that the Defendant could not properly be indicted for the consummated offense of aircraft piracy. The Government admits this. It is much less clear, however, whether the actions of the Defendant can serve as the basis for prosecution under Section 1472(i) for attempted aircraft piracy. For reasons which are now a matter of record, this court decided that such a prosecution was not precluded by the fact in the aircraft in question was not "in flight". In doing so, however, it did not have the benefit of the legislative history which has now been brought before the court.

■ The aircraft piracy statute, 75 Stat. 466, 49 U.S.C. § 1472(i) became law on September 5, 1961, amending the Federal Aviation Act of 1958. It should be pointed out that the 1961 amendment conferred federal jurisdiction for offenses committed on aircraft "in flight in air commerce". A 1970 amendment changed the wording of this portion of the statute from aircraft "in flight in air commerce" to aircraft "within the special aircraft jurisdiction of the United

States". Pub.L. 91–499, § 1(3), October 14, 1970, 84 Stat. 921. The parties agree that the 1970 amendment is of no consequence to the issue we face here. However, "[l]egislation should be interpreted in accordance with its stated and its obvious intent". United States v. Lonardo, 350 F.2d 523, 530 (6th Cir., 1965). Accordingly, we turn our attention to the legislative history of the 1961 amendment.

Although the Senate bill was passed in lieu of the House bill, the text of the House bill was substituted for the language of the Senate bill. Thus the House Report is the most instructive source for ascertaining legislative intent.

■ House Report No. 958, prepared by the Committee on Interstate and Foreign Commerce, reflects a legislative awareness of two conflicting policies and an intent to reconcile those conflicts in the legislation enacted. On the one hand, the Report recognizes that it is appropriate for state law enforcement agencies to enforce applicable state statutes without the interference of federal jurisdiction. On the other hand, it recognized the need for the creation of federal jurisdiction to cover crimes committed at high speeds and high altitudes where venue would otherwise be difficult to establish and where state law enforcement could not be effective to thwart the new brand of criminal activity, now commonly known as "hijacking". To reconcile these conflicting policies, the boundaries of federal jurisdiction were carefully circumscribed by the "in flight" limitation, now embodied in the term "special aircraft jurisdiction of the United States". With respect to the newly created Federal jurisdiction, the House Report states, at pages 2565–2566:

"This, we want to make clear, does not preempt any State jurisdiction, but would only supplement it. To emphasize that, it should be pointed out that the reported bill, except for the provision relating to concealed deadly or dangerous weapons, covers only of-

fenses committed while an aircraft is in flight." U.S.Code Cong. & Admin. News, 1961.

Among the offenses created in the reported bill, in addition to aircraft piracy, interference with flight crews, and carrying concealed deadly or dangerous weapons, is the offense of attempted aircraft piracy. Thus it seems clear that, in the contemplation of Congress, there can be no attempted aircraft piracy, within Federal jurisdiction, unless the aircraft is in flight.

The Government has argued that the language of the House Report should not be read as a reflection of Congress' intent to limit itself to offenses occurring in flight since other paragraphs of Section 1472, Title 49 impose criminal sanctions while the aircraft is not in flight, such as paragraphs (b), (c), (d), (e), (f), (g), (h), (l), (m) and (o).

In response, it should be pointed out that paragraph (l) prohibits carrying concealed weapons and is expressly excluded from the general in-flight limitation in the passage of the House Report just quoted. Furthermore, paragraphs (b), (c), (d), (e), (f), (g) and (h) were not part of the 1961 amendment to which the House Report referred. Reference to these paragraphs is unpersuasive rebuttal to language in the report accompanying completely distinct sections of the statute.

■ Debate in both chambers of Congress supports the conclusion that it was the intent of Congress that Federal jurisdiction over attempted aircraft piracy be limited to "in-flight" situations. In House debate, Rep. Oren Harris of Arkansas who introduced H.R. 8384, the text of which was enacted in 1961, stated, with respect to its jurisdictional reach:

> "The reported bill, except for the provision relating to concealed weapons, covers only offenses committed while an aircraft is in flight, which means while its wheels are off the ground."

Similarly, in Senate debate on the bill, Senator Engle of California, expressed his view of the jurisdictional reach of the statute. Senator Scott of Pennsylvania had asked Senator Engle how the proposed legislation would have applied to an incident which had occurred prior to the debate, known as the El Paso incident. As Senator Scott described the incident, "The attempt to take over the plane, to make the arrest and the resistance to arrest occurred while the plane was on the ground". Congressional Record, United States Senate, August 9, 1961, p. 15244. Senator Engle responded that "[i]n this situation, the local law takes over and is adequate . . It was our view that we should not in this situation impose Federal law any further than we had to in order to take care of the unique requirements of air transportation; and wherever it was possible, we ought to maintain the integrity of local law, both local and State. Wherever the local authorities can handle the situation, we want them to handle it." Congressional Record, U. S. Senate, August 9, 1961, p. 15244.

■ In our case, nothing about the "unique requirements of air transportation" dictates that Federal, rather than local, authorities should handle the situation. Defendant had boarded and then exited a plane which was parked at the terminal gate. She was spotted and seized in the terminal with the assistance of Detroit police. Local authorities were clearly capable of handling the situation. It appears clear to this court, from the legislative history of the Act, that it was not the intent of Congress that Federal jurisdiction should attach in these circumstances.

■ To the best of our knowledge, this is a case of first impression in which we must deal with a statute which is not free from ambiguity. It is appropriate, in such a situation, for a court to base its determination on persuasive legislative history. Steiner v. Mitchell, 350 U.S. 247, 254, 76 S.Ct. 330, 100 L.Ed. 267 (1956).

This court takes a back seat to no one in deploring "hijackings" which, in spite of their reprehensibility, have become increasingly commonplace. Hopefully, appropriate law enforcement action will some day succeed in preventing such crimes. This court's decision should in no way impede such prevention, but will instead implement the clear intent of Congress that, in situations such as the one in this case, prosecution of the person accused is best left in the hands of local authorities, without Federal intervention.

On reconsideration, this court will set aside its earlier decision denying the Defendant's motion to dismiss Counts 1 and 4. Defendant's motion to dismiss Counts 1 and 4 will be granted.

It is so ordered.