**NOT FOR FULL-TEXT PUBLICATION**
File Name: 09a0282n.06
Filed: April 15, 2009

**No. 07-6357**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellee, | ) | COURT FOR THE |
| | ) | EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| v. | ) | |
| | ) | |
| JONATHAN MARK BRINDA | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:     MARTIN, MOORE, Circuit Judges and, GWIN, District Judge.[*]

GWIN, District Judge:

In appealing the district court's sentence, Defendant-Appellant Jonathan Mark Brinda raises one narrow issue, saying that the imposition of lifetime supervised release, while within the guidelines range, was substantively unreasonable because it created a sentencing disparity. The district court sentenced Defendant Brinda to 60 months imprisonment and lifetime supervised release after he pleaded guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1).

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

-1-

For the reasons stated below, we **AFFIRM** the sentence of the district court.

## I. Introduction

In making his argument on appeal, Brinda relies on 18 U.S.C. § 3553(a)(6), which requires that a district court "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Accordingly, to address Brinda's argument, we will outline his offense conduct and criminal record, and then describe the sentencing proceeding in the district court.

*I.A. Factual Background*

In May of 2006, the Federal Bureau of Investigation became aware that Brinda was uploading images depicting child pornography to an online photograph storage account.[1] The FBI later interviewed Brinda about the images and he admitted in a written confession that he had (1) "downloaded approximately 40 child pornographic images" from a laptop at his parents' house, (2) "uploaded each of the child pornographic images onto" his online account, (3) "ordered [5-inch by 7-inch prints] of each of the . . . images," and (4) "received [the prints] in the U.S. Mail at [his] residence."

Following the confession, the Tennessee Bureau of Investigation examined the laptop that Brinda used to download the images. On the laptop computer, the Tennessee Bureau of Investigation found the following: five images of apparent minors who were either nude or wearing clothing which revealed the genitals; a large number of images from teen modeling websites; and an internet history that reflected searches for such terms as "preteen," "Lolita," and "teen nudists," and access

---

[1] The facts presented in this discussion are taken from the Presentence Investigation Report. Brinda only proffered one objection to the Report, which is irrelevant to the issues on appeal.

to sites that contained such images.

Brinda had also surrendered several items from his house to the FBI. In addition to examining the laptop computer, Tennessee Bureau of Investigation agents examined several floppy disks and CDs Brinda had surrendered and found over 400 suspect images of apparent minors who were either nude or engaged in sexually explicit activity or posing in sexually suggestive ways and several images of child models. The earliest image was dated October 14, 2005.

Brinda had no previous juvenile adjudications or adult criminal convictions. He reported that he had been arrested on a marijuana charge around 1994, but that the case was dismissed. No record of the marijuana arrest was found. Brinda had zero criminal history points and a criminal history category of I.

*I.B.*    *District Court Sentencing*

On October 27, 2007, the district court sentenced Brinda. During the sentencing proceedings, the district court accepted a plea agreement reached by Brinda and the Government. In the plea agreement, Brinda pleaded guilty to Count Two of the indictment (knowing receipt of child pornography) and the Government agreed to move for the dismissal of all remaining counts.

Before the sentencing date, Brinda had undergone a psychosexual risk assessment (the "assessment") to help the district court determine the danger and risk to others that Brinda's criminal activity may have posed. The assessment noted that Brinda suffered from posttraumatic stress disorder and schizoid personality disorder. Further, the assessment indicated that "[p]ersoanlity disorders are not very likely to respond to the psychotherapy."

While the assessment concluded that "treatment may be helpful," the prognosis was "guarded." In addressing the type of treatment necessary, the assessment concluded that

[b]ecause of [his] mental health, personality structure, and substance abuse problem[s], Mr. Brinda should avail himself of a program that will address all three [issues]. *If Mr. Brinda does not [enter] . . . a comprehensive treatment program to address all three [issues], he will be [at] a greater risk of re-offense.*

(emphasis added). The combination of Brinda's "high dynamic risk score" and personality disorder "suggest[ed] that a *very aggressive sex offender treatment program [wa]s called for*." (emphasis added).

The Presentence Investigation Report ("PSR") calculated that the guidelines range for Brinda's offense was a term of 60 to 71 months of imprisonment. The PSR also indicated that the statutorily-authorized term of supervised release was any term of years or life. (citing 18 U.S.C. § 3583(k)).

Brinda did not object to the guidelines calculation. Rather, acknowledging that lifetime supervised release was within the guidelines range, he raised several arguments against lifetime supervised release. First, Brinda said that the quantity of photographs involved in the offense was relatively small in comparison to other child pornography cases. Second, Brinda's attorney complained that the assessment was based on a 15 to 20 minute meeting, and that parts of the assessment were contradicted by Brinda's life experience. Brinda's attorney, however, declined the district court's invitation to move for a continuance to make written observations about the assessment or submit a countervailing assessment. Third, Brinda's attorney noted that his offense conduct was not particularly egregious relative to other child sex abuse cases.

In considering these arguments on lifetime supervision, the district court noted that this was "clearly a difficult issue." The court then said that it would take what it considered "the prudent course," and sentenced Brinda to a prison term of 60 months and a supervised release term of life.

-4-

The district court noted that Brinda could later apply for changes to the terms of his supervision.

This sentence reflected the lowest possible term of imprisonment (the statutory minimum) but also reflected the highest possible term of supervised release available within the guidelines range. On appeal, Brinda makes only one narrow argument: the district court's imposition of lifetime supervised release "was unreasonable and created [a] disparity in sentencing between himself and other similarly situated defendants." Brinda Br. at 11.

## II. Analysis

After *Booker*, we review a district court's sentencing determination for reasonableness "'under a deferential abuse-of-discretion standard.'" *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir.2007) (quoting *Gall v. United States*, 128 S.Ct. 586, 591(2007)). "Because '[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a),' this Court applies a great deal of deference to a district court's determination that a particular sentence is appropriate." *United States v. Mayberry*, 540 F.3d 506, 519 (6th Cir. 2008) (quoting *Gall*, 128 S.Ct. at 597). If a sentence is within the guidelines range, this Circuit applies a presumption of reasonableness to the sentence. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

The reasonableness requirement includes both the procedural and the substantive aspects of the sentence. *See Gall*, 128 S.Ct. at 597; *United States v. Thomas*, 498 F.3d 336, 339 (6th Cir.2007). Brinda's sole argument on appeal is that the imposition of lifetime supervised release is substantively unreasonable.

"[A] sentence may be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors

or gives an unreasonable amount of weight to any pertinent factor." *United States v. Brown*, 557 F.3d 297, 299 (6th Cir. 2009) (citing *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007)). Further, "'[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.'" *United States v. Blackie*, 548 F.3d 395, 398 (6th Cir. 2008) (citing *Gall*, 128 S.Ct. at 597).

Here, Brinda says that the sentence was substantively unreasonable because the district court failed to consider unwarranted disparities as required by 18 U.S.C. § 3553(a)(6). Section 3553(a)(6) requires that, before imposing a sentence, a district court "shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This disparity inquiry is generally a national one, although a district court may choose to consider a co-defendant's sentence. *United States v. Presley*, 547 F.3d 625, 631 (6th Cir. 2008).

In making this disparity argument, Brinda points to several child sex offense cases where a district court imposed lifetime supervised release and says that these example cases involved conduct far more egregious than his.[2] Brinda Br. at 13. Since he received the same amount of supervised release as the defendants in these example cases, Brinda says that the district court must have failed

---

[2] The Defendant summarized the cases as follows:

In [*United States v.*] *Presto*, [498 F.3d 415, 420 (6th Cir. 2007),] this Court noted that the offense was "a more serious offense than that of other defendants convicted of receipt of child pornography" because the defendant "not only possessed picture [sic] of minors being sexually abused but had himself molested a child." . . . See also, *United States v. Hayes*, 445 F.3d 536 (2nd Cir. 2006) (defendant given lifetime supervision where he was convicted of sexually abusing a child in state court more than a year after the events leading to his federal charges); *United States v. Allison*, 447 F.3d 402 (5th Cir. 2006) (defendant given lifetime supervision where he produced child pornography, thereby physically abusing children himself).

Brinda Br. at 13.

to consider the circumstances of his offense. Instead, Brinda continues, the district court made a "blanket determination" that lifetime supervised release was warranted because of the "statistically high rate of recidivism" in child sex offense cases. Brinda Br. at 16. To support his disparity argument, Brinda also directs us to language in *United States v. Poynter*, 495 F.3d 349, 355 (6th Cir. 2007), where this Court noted the importance of courts "preserv[ing] reasoned distinctions among offenders."

We reject Brinda's disparity argument because he has failed to rebut the presumption of reasonableness that we afford to a sentence within the guidelines range.[3] Under 18 U.S.C. § 3553(a)(6), a sentencing court must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Brinda has pointed to no cases where "defendants with similar records who have been found guilty of similar conduct" have received lesser terms of supervised release. Instead, Brinda points to cases where defendants received a term of lifetime supervised release, but committed "far more onerous" offenses. Brinda Br. at 13. These cases do not show that lifetime supervised release is unreasonable in Brinda's case. Such cases are, therefore, not sufficient to rebut the presumption of reasonableness.[4] Moreover, Brinda's reliance on *Poynter* is inapposite. 495 F.3d at 354-55. *Poynter*

---

[3] To the extent that Brinda challenges the reasonableness of lifetime supervision in child sex offense cases generally, this Court has already held that lifetime supervision is consistent with the penalties approved by Congress and recommended by the Sentencing Commission. *United States v. Kennedy*, 499 F.3d 547 (6th Cir. 2007), *cert. denied*, 128 S.Ct. 1648 (2008).

[4] Available statistical evidence suggests that Brinda's sentence is consistent national practice. For the years of 2007 and 2008, approximately 25% of individuals convicted under 18 U.S.C. § 2252A(a)(1)(b) or (b)(1) with a criminal history category of I received lifetime supervised release. This data is based on correspondence with Louis Reedt, Acting Deputy Director of the Office of Research and Data at the U.S. Sentencing Commission. In 2007, Reedt identified 34 cases nationally of convictions under 18 U.S.C. § 2252A(a)(2)(A) or (b)(1) where the defendant had a criminal history category of I and had zero criminal history points. Of these 34 cases, 8 defendants received lifetime supervised release. For the remaining 26 cases, the average term of supervised release was 82 months. Reedt also compiled the preliminary results for 2008 under the same statute and criminal history and found 50 cases nationally. Of those 50 cases, 12 received

concerned a sentence above the recommended guidelines range that was not entitled to a presumption of reasonableness. Thus, *Poynter*'s applicability to the instant appeal is limited.

We also reject Brinda's argument that the district court failed to consider the individual circumstances of his offense. Brinda says that his individual characteristics weigh against the imposition of lifetime supervised release[5] and that lifetime supervised release only "should be imposed upon those individuals who present a clear danger to children and for those who are recidivists." Brinda Br. at 17-18. The district court, however, said that Brinda's individual psychosexual assessment would "carry a great deal of weight." Brinda may think that the individual characteristics he identified weigh strongly against lifetime supervision, but the district court considered these characteristics and the psychosexual assessment and imposed a sentence within its discretion.

Brinda has failed to rebut the presumption of reasonableness that this Circuit affords to the district court's in-guidelines-range sentence.

### III. Conclusion

We hold that the district court's imposition of lifetime supervised release was not an abuse of discretion and was substantively reasonable. For the reasons stated above, we **AFFIRM** the sentence of the district court.

---

lifetime supervised release. Of the remaining 38 cases, the average term of supervised release was 110 months. *See* E-mail from Louis Reedt, Acting Deputy Director, Office of Research and Data, U.S. Sentencing Commission (Jan. 6, 2009, 03:17 PM).

[5] In support of this argument, Brinda cites "his lack of prior convictions, his lengthy and uninterrupted work history, his achievement of educational goals, his close family relations, his amenability to mental health and substance abuse treatment, his forthcomingness and cooperation during the psychosexual examination, and his lack of a high child sexual identity." Brinda Br. at 17.