**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 11a0775n.06

No. 07-5521

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Nov 18, 2011***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNTIED STATES OF AMERICA | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| JERRY LAMAR JENKINS, II, | ) | **OPINION** |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE:    KEITH, SUTTON, and MCKEAGUE, Circuit Judges.**

**McKeague, Circuit Judge.**  On March 13, 2002, Defendant-Appellant Jerry Jenkins was convicted of six counts stemming from stealing a large quantity of dynamite and was sentenced to 501 months' imprisonment.  On appeal, this Court affirmed Jenkins's conviction but remanded Jenkins's case for a *Booker* resentencing hearing.  On remand, the district court then sentenced Jenkins to a within-Guidelines sentence of 400 months' imprisonment.  Jenkins now appeals the substantive and procedural reasonableness of his sentence.  We **AFFIRM**.

## I.  BACKGROUND

### A.  Offense Conduct

On March 26, 2011, Jerry Jenkins ("Jenkins"), Michael Joyner ("Joyner"), Robert Gifford ("Gifford") and Jesse Debter ("Debter") stole explosives from a Wright Brothers Construction Company ("Wright Brothers") work site (the "site") in Tiftonia, Tennessee.

Jenkins and Joyner asked Jenkins's minor girlfriend, Tiffany Langston ("Langston"), to drop them off at the site. Both men were unable to open the protective boxes containing the explosives. Undeterred, Jenkins and Joyner called Debter for assistance. Debter arrived with both a hacksaw and Gifford, but neither the tool nor the additional manpower were availing. Jenkins and Gifford then stole a Wright Brothers truck, drove away from the site, and returned with a jiffy saw. The jiffy saw enabled the men to access the explosives, which they then loaded onto the stolen Wright Brothers truck. Jenkins, Joyner, and Gifford then drove the truck across state lines to Trenton, Georgia, where they unloaded the explosives at Jenkins's family home.

Over the next two days, Jenkins and his co-conspirators hid some of the explosives by burying them in the woods. During this time, Jenkins alarmed Joyner by announcing that he wanted to "take out" several government buildings, including the Franklin Building, which housed the office of the Bureau of Alcohol, Tobacco and Firearms ("ATF"). Joyner also overheard Jenkins telling Langston that Joyner was a liability and that Jenkins intended to take Joyner out into the woods and shoot him in the head. These statements motivated Joyner to begin cooperating with ATF agents. ATF agents subsequently obtained search warrants and seized the stolen explosives.

Gifford, Debter, and Joyner were charged with receiving, possessing, and concealing stolen explosives, and on December 20, 2001, they all pled guilty pursuant to plea agreements. On January 8, 2002, Jenkins was charged with nine criminal counts: conspiracy to steal explosives; stealing explosives; interstate transportation of a stolen vehicle; carrying an explosive during the commission of a felony; concealing stolen explosive materials; possession of explosives by a felon; possession of a firearm by a felon; threatening to murder a federal law enforcement officer; and attempting to

corruptly persuade a witness. The jury found Jenkins guilty on the first six counts and not guilty on the latter three.

**B. Jenkins's Initial Sentencing Hearing and Appeal**

Jenkins's Presentence Report ("PSR") assigned him an offense level of 37 and a criminal history category V. Jenkins's offense level reflected a four-level leadership enhancement; a two-level obstruction-of-justice enhancement; and a two-level enhancement for use of a minor during the offense. Jenkins received a criminal history category of V because of his extensive criminal history, which earned him ten criminal history points. An offense level of 37 along with a criminal history category of V yielded a Guidelines range of 324 to 405 months' imprisonment for Counts One, Two, Three, Five, and Six, plus a mandatory consecutive term of 120 months' imprisonment for Count Four, producing a total Guidelines range of 444 to 525 months' imprisonment.

Jenkins was sentenced on August 16, 2002. At sentencing, the district court overruled Jenkins's objections to his PSR and, treating the Guidelines as mandatory, determined Jenkins's guideline range was 444 to 525 months. The court imposed a term of 21 months' imprisonment on Count One and consecutive terms of 120 months' each for Counts Two, Three, Four, and Six. The court did not impose a sentence for Count Five. In addition, the court ordered restitution to compensate the Wright Brothers's insurer. Jenkins was sentenced to 501 months' imprisonment and he timely appealed.

On appeal, this Court affirmed Jenkins's conviction, but remanded Jenkins's case for resentencing under *United States v. Booker*, 543 U.S. 220 (2005). This Court instructed the district

court to reconsider its application of the two-level enhancement for use of a minor during the offense but rejected Jenkins's remaining claims of alleged error relating to the calculation of his guideline range. *United States v. Jenkins*, 229 F. App'x 362, 369 (6th Cir. 2005).

At Jenkins's *Booker* resentencing hearing, the district court determined that the use of a minor enhancement did not apply, resulting in a new Guidelines range of 382-447 months' imprisonment. The district court then considered Jenkins's motion for a downward departure from the Guidelines range because his co-defendants received substantially lesser sentences. The court denied Jenkins's motion, explaining that, while it had the authority to impose a non-guidelines sentence, it declined to exercise its authority because of the large quantity of explosives and the leading role Jenkins played in the conspiracy.

The district court then addressed Jenkins's 18 U.S.C. § 3553(a) factors and noted that Jenkins's conduct was extremely serious. The court concluded: "[L]ooking at *Booker* . . . the sentencing guidelines gives the Court sufficient authority to impose a sentence that will achieve all the factors set forth in Section 3553 . . . . So we'll stay within the guidelines." The district court imposed a sentence of 400 months' imprisonment. This appeal followed.

On appeal, Jenkins argues that the district court erred on remand by failing to fully consider the sentencing disparity between Jenkins and his co-defendants. Specifically, Jenkins contends that the district court: 1) failed to recognize its authority to depart from the sentencing guidelines; 2) failed to properly apply §3553(a)(6); and 3) failed to adequately explain its rejection of his sentencing disparity argument. All three of Jenkins's arguments are unavailing.

## II.  ANALYSIS

### A.  Standard of Review

This Court reviews a district court's sentence for procedural and substantive reasonableness under a deferential abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 41 (2007).  A sentence is procedurally unreasonable if the district court committed serious procedural error "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors as mandatory, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ."  *Gall*, 552 U.S. at 51.  A sentence is substantively unreasonable if the district court imposes the sentence "arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor."  *United States v. Griffin*, 530 F.3d 433, 439-40 (6th Cir. 2008) (internal markings omitted).  A sentence that falls within the advisory Guidelines range "will be afforded a rebuttable presumption of reasonableness on appeal."  *United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008).  The "defendant bears the burden of rebutting this presumption."  *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009).

### B.  Jenkins's Sentence is Procedurally and Substantively Reasonable

1. *The District Court Properly Recognized its Authority to Depart from the Guidelines*

Jenkins first asserts that his within-Guidelines sentence is unreasonable because the district court failed to recognize its authority to depart from the Guidelines based on the disparity between Jenkins's sentence and his co-defendants' sentences.  This claim is belied by the record.

5

First, Jenkins's contention that this Court "specifically authorized the District Court on pages 9 and 10 of said opinion to consider or revisit the issue of the disparity of sentences among the defendants," Defendant-Appellant Brief at 20, is simply wrong. This Court remanded Jenkins's case to the district court "for re-sentencing, with instructions to treat the sentencing guidelines as advisory." *United States v. Jenkins*, 229 F. App'x 362, 368 (6th Cir. 2005). Further, "in the interests of judicial economy, [this Court also reviewed] Jenkins's claims of error in the calculation of his guidelines sentence, because *Booker* instructed sentencing courts to take the guidelines into account when determining a defendant's sentence." *Id.* After a thorough review, this Court found that the district court was required to "re-examine the use of [the minor] sentencing enhancement." *Id.* at 369. This Court then stated, however, that while "Jenkins has raised several other alleged errors relating to the calculation of his guideline range for sentencing purposes . . . after careful consideration of each of those claims, we find no error in those calculations." *Id.* Thus, this Court expressly rejected Jenkins's other sentencing claims, and Jenkins's claim that this Court specifically urged the district court to reevaluate Jenkins's sentence in light of his co-defendants' lighter sentences is an unfortunate misrepresentation of this Court's decision.

Second, the district court entertained extensive arguments from both Jenkins and the United States during Jenkins's re-sentencing hearing regarding its authority to consider the disparity between Jenkins's sentence and his co-defendants' sentences. In addition, the district court expressly and unequivocally stated it was cognizant of its authority to impose a downward departure on two occasions. On the first occasion, the Court stated:

> If the Court was not clear before, the Court will make it very, very clear now. The Court understood at the time, the Court understands now, that under the guidelines it does have the authority to depart downward. The Court also understands that under the *Booker* decision the Court has the authority to impose a nonguidelines sentence.

When the district court later considered whether a nonguidelines sentence was appropriate, it again invoked its authority to depart from the guidelines, stating that it " recognizes that it has the authority to depart downward, exercises that authority not to, and also not to impose a nonguidelines sentence. So we'll stay within the guidelines." (R. 185, Resentencing Tr. at 42.)

Because the district court followed this Court's instruction on remand and expressly recognized its authority to depart from the guidelines on two occasions, Jenkins fails to establish that the district court abused its discretion on remand.

### 2. The District Court Properly Applied 18 U.S.C. § 3553(a)(6)

Jenkins next claims that his within-Guidelines sentence is unreasonable because the district court failed to properly apply § 3553(a)(6). Section 3553(a)(6) requires a district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." 18 U.S.C. § 3553(a)(6). Jenkins argues that the totality of the circumstances "includes the existence of similarly situated, excessively diversely sentenced co-defendants," Defendant-Appellant Brief at 24, and contends that the district court erred by not reducing Jenkins's sentence so that it was comparable to that of his co-defendants. Jenkins's argument is both factually and legally unavailing.

First, Jenkins's claim is factually incorrect because Jenkins is far from similarly situated to his co-defendants. Indeed, the district court expressly distinguished Jenkins from his co-defendants

throughout Jenkins's re-sentencing. First, the district court observed that "[t]hese explosives were not found in the possession of the other defendants; they were found on land owned by [Jenkins's] family up on Sand Mountain. I believe they were buried away, which would indicate that Mr. Jenkins had a greater say in what was going on than the other defendants. (R. 18 Resentencing Tr. at 39-40.) The district court further distinguished Jenkins from his co-defendants:

> [T]aking into account Mr. Jenkins' background and his history, the Court also felt that some specific deterrence was appropriate. From the presentence report and some of the testimony at trial, the evidence indicated that Mr. Jenkins had made threats against some of the other people involved here. And there was some . . . suggestion that Mr. Jenkins had made some remarks that the ATF building or some federal building was going to be destroyed with the explosives. So the Court also had to take that into consideration. In taking all those things into consideration, the Court believes now, looking at *Booker*, that the sentencing guidelines gives the Court sufficient authority to impose a sentence that will achieve all the factors set forth in Section 3553, though would not be any greater than necessary to achieve those purposes.

(R. 185, Resentencing Tr. at 42.)

Second, Jenkins's Section 3553(a)(6) argument is without legal merit. This Court has repeatedly recognized that Section 3553(a)(6) "is concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir 2007) (emphasis added); *see also United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) ("[T]his Court has been clear that, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," does not apply to co-conspirators."); *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008) ("[Section 3553(a)(6)] concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between [co-

8

conspirators].") (internal citations omitted). Nonetheless, the district court entertained Jenkins's

disparity argument throughout his *Booker* re-sentencing even though it was not required to do so.

*See United States v. Brinda*, 321 F. App'x 464, 467 (6th Cir. 2011) (explaining that a district court

may "choose to consider a co-defendant's sentence" as part of its Section 3553(a)(6) analysis but it

is not required to do so).

### 3. The District Court's Sentence was Substantively Reasonable

Jenkins's final contention is that the district court erred because it was unreasonable for the

district court to consider facts that applied to all of Jenkins's co-defendants when sentencing Jenkins.

Specifically, Jenkins argues that "the findings of fact recited at page 40 of the resentencing hearing

are erroneous in that the very facts that he cites to justify the 'reduced' 400 month sentence of the

appellant basically apply equally to the co-defendants, Joyner and Gifford." and then proceeds with

a laundry list of reasons why Jenkins should have consequently received a lighter sentence.

Defendant-Appellant Brief at 33-34. Jenkins's argument is unavailing for several reasons.

First, Jenkins misrepresents the district court's analysis. While the district court articulated

facts common to both Jenkins and his co-defendants during sentencing, the district court also

provided an exhaustive analysis of facts that uniquely applied to Jenkins. In particular, the district

court reasoned:

> [T]aking into account Mr. Jenkins' background and his history, the Court also felt
> that some specific deterrence was appropriate. From the presentence report and some
> of the testimony at trial, the evidence indicated that Mr. Jenkins had made threats
> against some of the other people involved here. And there was some . . . suggestion
> that Mr. Jenkins had made some remarks that the ATF building or some federal
> building was going to be destroyed with the explosives. So the Court also had to take
> that into consideration.

(R. 185, Resentencing Tr. at 42.) The court also entertained testimony from both parties before imposing Jenkins's within-Guidelines sentence, and the United States raised facts that exclusively applied to Jenkins, such as his "recidivist nature." (R. 185, Resentencing Tr. at 48). As such, Jenkins's suggestion that the district court exclusively considered facts common to Jenkins's co-defendants in order to arrive at a disparate sentence is incorrect.

Second, a district court can arrive at a "legitimate co-defendant disparit[y]" for reasons such as "differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009) (internal citations omitted). All of the *Carson* factors apply in this case: First, Jenkins's criminal history was different from that of his co-defendants. Second, Jenkins's "offenses of conviction" substantially distinguished him from his co-defendants: unlike his co-defendants, Jenkins was convicted of carrying an explosive during the commission of a felony, which resulted in a 120-month mandatory consecutive sentence, and Jenkins also distinguished himself as the only individual to receive an enhancement for obstruction of justice and the only individual who expressed an intent to destroy a federal building with the explosives. Finally, Jenkins's co-defendants all pled guilty and cooperated with the government. *Jenkins*, 229 F. App'x at 364. Although Jenkins claims that he cooperated with law enforcement, the record indicates that the assistance he provided was limited to cooperating with officers as they executed a search warrant. In contrast, Jenkins's co-defendants provided extensive and meaningful assistance to the government.

10

In sum, Jenkins's sentence was substantively reasonable. The record indicates that the district court carefully considered the numerous ways that Jenkins distinguished himself from his co-defendants. Further, all three of the "legitimate factors" for disparate sentences as outlined by this Court described in *Carson* apply to Jenkins. As such, Jenkins has failed to establish that the district court's within-Guidelines sentence was substantively unreasonable.

## V. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's sentence.