**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0459n.06

**No. 12-3794**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
May 09, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Southern |
| JOEL RODRIGUEZ–SOLANO, | ) | District of Ohio |
| | ) | |
| Defendant-Appellant. | ) | |

Before:     BATCHELDER, Chief Judge; GUY and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.  Joel Rodriguez–Solano, a native of Mexico, pled guilty to a charge of illegal reentry into the United States after having been previously removed subsequent to the commission of a felony.  The district court imposed a 36-month term of imprisonment, a sentence below his Guidelines range of 41 to 51 months.  Rodriguez–Solano appeals his sentence on grounds of procedural and substantive unreasonableness.  For the following reasons, we affirm.

I

Rodriguez–Solano was convicted of trafficking in cocaine, a first-degree felony, in the Franklin County Court of Common Pleas in August 2006.  After serving a period of time in Ohio state prison, the United States deported him in November 2009.  Less than two years later, Rodriguez–Solano was found in a Franklin County prison, following his arrest on drug-abuse

charges. The Government indicted him on one count of illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(1). He pled guilty pursuant to a plea agreement with the Government.

Prior to his sentencing hearing, the probation office prepared a presentence report that calculated Rodriguez–Solano's Guidelines range at 41 to 51 months. Rodriguez–Solano agreed with this calculation, but argued that the 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A), which applied because he had a prior drug-trafficking conviction, was unduly harsh. His argument was twofold: He first claimed that § 2L1.2 double counted his prior conviction, as points for a defendant's criminal history are also assigned under § 4A1.1. The resulting base level scored illegal reentry higher than a number of far more serious crimes. He further objected to the provision because it "lack[ed] any sound policy rationale" and "was not based on empirical research concerning deterrent efficacy or any other variable relevant to the purposes of sentencing." In light of this, Rodriguez–Solano urged the district court to focus on the specific circumstances of his case and not to allow the 16-level enhancement to "distort the [district court's] exercise of discretion in determining the minimally sufficient sentence."

The district court addressed Rodriguez–Solano's argument during his sentencing hearing. After summarizing his argument, the court invited his attorney to add any additional commentary. To this the attorney responded that "our request would be that the potential application of Section 2L1.2 should not take away the discretion the Court has to consider a downward variance in this case." He went on to discuss the family considerations that brought Rodriguez–Solano back to the United States, namely the desire to reunite with his eight-year-old daughter, who resides in Ohio with her mother, and to provide financial support for his father, an elderly farmer, in Mexico.

The Government responded by emphasizing that the crux of the defendant's argument was that the district court could consider the potential double-counting effect of § 2L1.2 and that he did not in fact object to its applicability to this case.

After allowing Rodriguez–Solano to allocute, the judge imposed a below-Guidelines sentence of 36 months, finding that the defendant's requested 24-month sentence would not be just punishment under the circumstances. The district judge highlighted contradictory statements made by Rodriguez–Solano during his allocution and his past problems with alcohol abuse. The court further acknowledged the facts that Rodriguez–Solano had been punished for his prior drug offense and that many people face a financially distressing situation in Mexico. In light of this, the court varied downward from the bottom end of the Guidelines by five months.

The district court concluded the hearing by asking the parties if they had any additional objections that they wished to put into the record. *See generally United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004). Rodriguez–Solano objected to the substantive reasonableness of the sentence. He subsequently filed a timely appeal with this court, raising claims of procedural and substantive unreasonableness.

II

We must first consider whether the sentence is procedurally reasonable. The goal of procedural review is to ensure that the sentencing judge "has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Each party has a duty to object to the procedural rulings made by a sentencing court in order to preserve them for appeal. *United States v. Vonner*, 516 F.3d 382, 385

(6th Cir. 2008) (en banc). When a sentencing judge asks the parties if they have any additional objections not previously raised and the complaining party fails to raise an issue, we review that issue for plain error. *Ibid.* (citing *Bostic*, 371 F.3d at 872–73). Under plain-error review, the defendant must show "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 386 (internal quotation marks omitted).

Procedural review involves a three-factor analysis: (1) whether the court properly calculated the Guidelines range; (2) whether the court considered the § 3553(a) factors and the parties' arguments; and (3) whether the court adequately explained why it imposed the chosen sentence. *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). Although the district court must consider the § 3553(a) factors, it need not explicitly reference each factor. *United States v. Hernandez–Fierros*, 453 F.3d 309, 312 (6th Cir. 2006). Rather, the court must "make an individualized assessment based on the facts presented, and . . . discuss all relevant statutory factors to facilitate reasonable appellate review." *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009) (internal quotation marks omitted).

If the sentence survives procedural-reasonableness review, we then review the sentence for substantive reasonableness under an abuse-of-discretion standard. *United States v. Barahona–Montenegro*, 565 F.3d 980, 983 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)). Substantive review requires that the court "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. "A sentence is substantively unreasonable if the sentencing court arbitrarily selected the

sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor." *United States v. Castilla–Lugo*, 699 F.3d 454, 464 (6th Cir. 2012) (internal quotation marks omitted). Because the district court is better situated to evaluate the facts of the case and determine their import under the sentencing rubric of § 3553(a), we apply "a great deal of deference to a district court's determination that a particular sentence is appropriate." *Id.* at 465 (internal quotation marks omitted). Furthermore, a within-Guidelines sentence is afforded a rebuttal presumption of reasonableness. *Ibid.* When the sentencing judge imposes a sentence below the Guidelines range, "simple logic compels the conclusion that . . . [the] defendant's task of persuading us that [a] more lenient sentence . . . is unreasonably long is even more demanding." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

III

A

Rodriguez–Solano's only objection to the procedural reasonableness of the district court's sentence is that the court failed to give an adequate explanation of the sentence imposed. Because he did not raise this issue during the sentencing hearing, we review it for plain error. *Vonner*, 516 F.3d at 385. After calculating the appropriate Guidelines sentence—a calculation that the defendant agreed was correct—the judge discussed Rodriguez–Solano's arguments regarding the application of § 2L1.2:

> THE COURT: Now, the argument with respect to the appropriate sentence in this case. I have reviewed the memorandum filed by counsel which in this case includes the defendant's request for a variance - - right, Jose?

                    MR. VELEZ:  Yes, Your Honor.

                    THE COURT:   - - from the applicable guideline range.  Your
argument, if I could summarize, emphasizes that the 16-level increase attributable to
the base offense level, which you argue, is overly harsh.  You also state that this
increase grades the crime of reentry at the same level as offenses that are far greater
in seriousness, including sex trafficking of children, bombing an airport, and robbery
with a weapon causing serious bodily harm.

                    And you've also argued the sentencing commission has not articulated
any rationale for the increase, resulting in a sentence far harsher and insufficient to
provide just punishment and adequate deterrence.

                    Do you want to add any more to that?

                    MR. VELEZ:  Your Honor, as to the downward variance petition, our
request would be that the potential application of Section 2L1.2 should not take away
the discretion the Court has to consider a downward variance in this case.

        At bottom, Rodriguez–Solano asked the court to exercise its discretion to sentence

him below the 41-month minimum Guidelines range.  He argued that the application of U.S.S.G. §

2L1.2(b) to this case was inconsistent with 18 U.S.C. § 3553(a)(2)(A), which calls upon courts to

consider the need for the sentence imposed "to reflect the seriousness of the offense."  His argument

appears to have been well taken, at least in part, as the district court did in fact vary downward by

five months.

        While the court did not give Rodriguez–Solano the entirety of his requested variance,

it did give a thorough explanation as to why:

                    THE COURT:  Why didn't you stay at home in Mexico?  You knew
you weren't permitted to return to this country.  If your father was ill, you could have
stayed there to take care of him.  It's contradictory what you're saying to this Court.
Now you want to return to take care of your father.  You should have stayed there in
Mexico, and you wouldn't have to face the federal charge against you for unlawful
reentry.  You knew you weren't supposed to return to this country.

. . . .

> I don't think a sentence of 24 months is just punishment under the circumstances. The defendant is 31 years old. He has a problem with alcohol, consumes up to 24 beers in a day. That may lead to some of his rationale and his thinking, to be as subtle as I can. So he's a person who is not predictable. You know that. Anyone who has to use substances like alcohol - - there's no evidence that he uses drugs, but it's a concern to the Court.
>
> The Court has to fashion a sentence that will deter him from returning to this country. A sentence of 24 months just isn't enough.

To put this in the language of § 3553(a), the district court was concerned that a 24-month sentence would not "afford adequate deterrence to criminal conduct." *Id.* § 3353(a)(2)(B). The court was specifically troubled by a glaring inconsistency in Rodriguez–Solano's defense: he claimed to be less culpable because he returned to the United States to assist his family financially, which he could not do by working on the family farm in Mexico, yet he argued that he would not offend again because he planned to assist his family financially by working on the family farm in Mexico. While the district court did not explicitly connect its concern of recidivism with its rejection of Rodriguez–Solano's concern of overpunishment, it did not need to do so. *See United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998) ("A court need not engage in ritualistic incantation in order to establish consideration of a legal issue." (internal quotation marks omitted)). Indeed, the unspoken connection between the two issues is quite obvious, as it would be exceedingly odd outside the realm of petty crime for a proposed term of imprisonment to be simultaneously too low to deter future criminal behavior yet too severe in relation to the act committed.

Rodriguez–Solano cites *United States v. Wallace*, 597 F.3d 794 (6th Cir. 2010), in support of his position. However, that case is readily distinguishable. In *Wallace*, a divided panel

of this court vacated the defendant's sentence on procedural grounds because it failed to respond to the defendant's nonfrivolous argument for a lower sentence. *Id.* at 806. The facts and circumstances of *Wallace* were unique: The defendant, a member of an oxycodone distribution ring, asked the district court to consider the sentence of her co-conspirator, the admitted head of the ring, when imposing her sentence. *Id.* at 802–03. The ringleader received a substantial reduction in his sentence for acceptance of responsibility and because he suffered from sickle-cell anemia. *Id.* at 802. Though the defendant made it clear that she was appealing to 18 U.S.C. § 3553(a)(6), which calls upon judges to consider "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," the majority observed that "no part of the record makes clear that the district judge even understood Defendant's argument." *Id.* at 803, 806.

It is notable that the majority's holding was extremely narrow. In collecting a number of cases on the issue, the majority recognized that cases with a "bare-bone" recitation of the argument, *id.* at 805 (citing *United States v. Petrus*, 588 F.3d 347, 356 (6th Cir. 2009)), a "conceptually straightforward" sentencing objection, *ibid.* (citing *Simmons*, 587 F.3d at 361), or a reasoning that "accounted for the nature and circumstances of the offense and the history and the characteristics"of the defendant, *ibid.* (citing *United States v. Lapsins*, 570 F.3d 758, 774 (6th Cir. 2009)), would all pass muster. The sentence at issue in *Wallace* simply did not clear this low bar.

Two key differences prove fatal to Rodriguez–Solano's comparison and to his argument in general. First, and as discussed above, it is plain from the record that the district court acknowledged and understood Rodriguez–Solano's downward-variance argument. Not only did the district court's oral summary of the argument track the structure of his sentencing brief with near-

verbatim accuracy, but also the court invited his attorney to make any needed clarification or addition thereafter. This is a far cry from the situation presented in *Wallace* and is certainly not error, plain or otherwise. Even if we were to assume that the district court plainly erred in not addressing Rodriguez–Solano's argument in more detail, it is manifest that this error did not prejudice his substantial rights. Again unlike *Wallace*, the district court here gave a detailed explanation of why it imposed the sentence that it did, specifically that it was concerned about the defendant's potential to recidivate. Further discussion of Rodriguez–Solano's concern of overpunishment would not have affected the outcome of the case—lenity and deterrence are very much opposite sides of the same penological coin, and to the extent that the district court rooted its sentence in one concept, it did so to the exclusion of the other. Accordingly, we reject Rodriguez–Solano's procedural-reasonableness argument.

B

We next review Rodriguez–Solano's sentence for substantive reasonableness. His sole argument is that a prison term of 24 months would have satisfied the purposes of sentencing laid out in § 3553(a). He argues that his crime, though a felony, was committed for noncriminal purposes, namely to reunite with his daughter and to earn money to tend to his ailing father. The record demonstrates that the district court believed that, though these concerns weighed in favor of lenity to some degree, they also created a concern that the defendant would offend again. The judge responded directly to Rodriguez–Solano's assertion that he reentered to help his father financially, noting that it was contradictory for him to claim that he returned to the United States to help his

father, yet that the court did not need to worry about him returning for the very same reason after his release.

To be sure, it appears that the district court credited Rodriguez–Solano's plea for lenity to an extent. Instead of imposing the low-end Guidelines sentence of 41 months requested by the Government, the judge varied downward to 36 months. Aside from the bald assertion that a 24-month sentence would have been sufficient, Rodriguez–Solano does not explain how the district court abused its discretion by imposing a below-Guidelines sentence. His argument therefore fails.

IV

For the foregoing reasons, we **AFFIRM** Rodriguez–Solano's sentence.